UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR MORA,<br><br>    Plaintiff,<br><br>v.<br><br>MARTEN TRANSPORT, LTD.,<br><br>    Defendant. | Case No. 23-cv-06004-JD<br><br>**ORDER RE REMAND** |

    Plaintiff Hector Mora, on behalf of himself and a putative class of current and former truck drivers employed by defendant Marten Transport, Ltd. (Marten), sued Marten on a variety of wage and hour claims under California state law. Dkt. No. 1, Ex. C. The complaint was originally filed in the Santa Clara Superior Court, and was removed by Marten under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). Dkt. No. 1.

    Mora says that the case should be remanded because Marten has not plausibly established the $5 million amount in controversy required for CAFA jurisdiction. Dkt. No. 12. The parties' familiarity with the record is assumed. Because Marten used unreasonable and unsupported assumptions to estimate the amount in controversy, it has not met its burden of demonstrating that $5 million or more is in play, and the case is remanded to the Superior Court.

**DISCUSSION**

    The Court has detailed the standards for CAFA removal in other cases, and incorporates that discussion here. *See*, *e.g.*, *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1135-37 (N.D. Cal. 2020) (and cases cited therein); *Moore v. Dnata US Inflight Catering LLC*, No. 20-cv-08028-JD, 2021 WL 3033577 (N.D. Cal. July 19, 2021).

    To start, Mora's repeated contention that "[t]he removing party must submit 'summary-judgment-type evidence' relevant to the amount in controversy *at the time of removal*" is not well

taken. Dkt. No. 15 at 3 (emphasis added); *see also* Dkt. No. 12 at 3 ("Defendant's Notice of Removal is devoid of any factual and evidentiary support sufficient to establish that the amount in controversy has been satisfied."). The law has been well established for some time now that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, and does not need evidentiary submissions." *Anderson*, 556 F. Supp. 3d at 1136 (cleaned up); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (a notice of removal "need not contain evidentiary submissions.").

Even so, now that Mora has made a factual attack on defendant's removal allegations, Marten bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $5 million. *See Anderson*, 556 F. Supp. 3d at 1136 (citing *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020)). In this situation, the plaintiff is not required to proffer his own evidence on the actual amount in controversy, and may instead rely, as Mora has done here, on "a reasoned argument as to why any assumptions on which [defendant's numbers] are based are not supported by evidence." *Harris*, 980 F.3d at 700.

Marten has made Mora's job considerably easier by offering next to nothing in the way of evidence. A declaration by Susan Deetz, the Director of Human Resources for Marten Transport, offers only these facts: (1) between October 19, 2019, to the filing of Marten's notice of removal on November 20, 2023, there "are at least 1,398 truck drivers who drove for Marten in California"; (2) approximately 471 of those drivers "were Marten's current drivers"; (3) "approximately 927 drivers were Marten's former drivers"; and (4) during the relevant time period, "truck drivers who drove for Marten in California were paid on a weekly basis." Dkt. No.14-1 (Deetz Decl.) ¶¶ 3-6.

That is the sum total of Marten's ostensible evidence that the amount in controversy exceeds $5 million. On that anemic record, Marten proposes a variety of alternative calculations in its attempt to meet the $5 million amount. *See* Dkt. No. 14 at 8 nn.2-3, *id.* at 10 n.4, *id.* at 11 n.5, *id.* at 13 n.6, and *id.* at 14 n.7. These calculations are based, respectively, on minimum wage

penalties, untimely wages during employment penalties, untimely wages at separation penalties, wage statement claim penalties, recordkeeping claim penalties, and attorneys' fees. *Id*.

Much of this is of scant value because the calculations are based purely on assumptions about the number of weeks worked by class members, without any factual support whatsoever. For example, Marten posits that the minimum wage penalties for the 471 total current drivers, assuming a violation rate of one violation per pay period, is as follows:

> 3 years (statute of limitations) x 50 weekly pay periods (assuming 2 weeks off per year) x 1 violation per pay period = <u>150 violations per driver</u>.  (1 initial violation x $100) + (149 subsequent violations x $250) = <u>$37,350 in penalties per driver</u>.  471 drivers x $37,350 = <u>$17,591,850</u>.

Dkt. No. 14 at 8 n.2.  Marten also offers a more restrained version of the same calculation, assuming a lower violation rate of one minimum wage violation every other week, but the calculation is the same in its reliance on workweek assumptions:

> Assumption of only <u>75 violations per driver</u>.  (1 initial violation x $100) + (74 subsequent violations x $250) = <u>$18,600 in penalties per driver</u>.  471 drivers x $18,600 = $8,760,600.

*Id.* n.3.

Critically, Marten did not offer any evidence that might validate or make reasonable its assumption that each of the 471 "current" drivers worked 50 weekly pay periods for the entire 3-year time period at issue.  Marten tries to defend its position by stating that it did "not assume that all truck drivers worked every pay period," and instead "accounted for 2 weeks off per year per truck driver." *Id*. at 7.  But why this additional assumption might be reasonable is again not explained.  Marten curiously relies on *Bryant v. NCR Corporation*, 284 F. Supp. 3d 1147, 1150 (S.D. Cal. 2018), for the proposition that it "need not 'produce business records setting forth the precise number of employees in [the] putative class . . . and the precise calculation of damages alleged to meet its burden regarding the amount in controversy.'" Dkt. No. 14 at 7.  That may be, but in *Bryant*, the removing defendant submitted a declaration from its "Field HR Consultant" in which the consultant stated that he had "reviewed data retrieved from Defendant's payroll and human resources management system," and "the current and former customer engineers were employed by Defendant for a total of approximately 74,420 workweeks from November 16, 2013

to the present." 284 F. Supp. 3d at 1150.  Where, in *Bryant*, there was a specific evidentiary proffer of the number of relevant workweeks worked by class members based on a review of defendant's data, here, Marten has plucked out of thin air its assumption that all 471 drivers worked for 50 weeks a year for 3 years.  This is an inadequate showing to meet Marten's burden of establishing CAFA removal jurisdiction.

Most of Marten's remaining calculations suffer from the same defect.  *See* Dkt. No. 14 at 10 n.4 (calculating untimely wages during employment penalties on assumption that 471 drivers worked 50 weekly pay periods during 1-year statute of limitations period);[1] *id*. at 13 n.6 (calculating wage statement claim penalties on assumption that 471 drivers worked 50 weekly pay periods during 1-year statute of limitations period); *id*. at 14 n.7 (calculating recordkeeping claim penalties on assumption that 471 drivers worked 50 weekly pay periods during 1-year statute of limitations period); *id*. at 14-15 (calculating 25% attorneys' fees based on minimum wage claim calculations which were based on unsupported workweek assumptions).

The one calculation that does not rely on this unsupported workweek assumption is Marten's calculation for untimely wages at separation penalties.  For those penalties, Marten has offered this calculation, assuming that each former driver had some unpaid wages at the time of separation:

> 927 former drivers who drove in California x $12 (the lowest California minimum wage within the proposed 4-year class period) x 10 hours (assuming a full day of driving is 10 hours [the Department of Transportation's regulations applicable to commercial truck drivers provide that commercial truck drivers may drive a maximum of 11 hours after 10 consecutive hours off duty, *see* 49 C.F.R. § 395.3]) x 30 days = $3,337,200.  Because California's minimum wage steadily increased throughout the proposed class period, applying the higher minimum wage rates would only increase the amount in controversy.

*Id*. at 11-12 n.3.  Of the various calculations Marten has offered, this is the only one that comes close to being based on a "chain of reasoning that includes assumptions based on reasonable grounds," *Anderson*, 556 F. Supp. 3d at 1136-37 (quotations and citation omitted), but at a total of

---

[1] It is no more reasonable to assume that the 471 truck drivers all worked 50 weeks for one year, as opposed to three.

4

1  $3,337,200, it is not sufficient.  Even assuming that a 25% attorney's fees award could be added to
2  that amount, which Marten has not specifically argued, the amount would still be only $4,171,500.
3       In sum, Marten has come up short after a full and fair opportunity to present evidence and
4  arguments for removal under CAFA.  It has failed to demonstrate by a preponderance of the
5  evidence that this case puts $5 million or more into play.

## CONCLUSION

The case was improperly removed under CAFA.  It is ordered remanded to the Superior Court of California for the County of Santa Clara.

**IT IS SO ORDERED.**

Dated:  February 8, 2024

JAMES DONATO
United States District Judge